Richardson, Ch. J.,
delivered the opinion of the court:
Of the 9th of June, 1885, during the recess of the Senate, the claimant was commissioned by the President to be agent for the *335 Indians of the Pueblo Agency, in Sew Mexico, to fill a vacancy then existing, to hold the office, according to the form of the commission, “ during the pleasure of the President of the United States for the time being, and until the end of the next session of the Senate of the United States, and no longer.”
He was nominated to the Senate for appointment at the next session, but the Senate adjourned on the 5th of August, 1886, without having acted thereon. Still he continued to exercise the duties of the office until September 13, 1886, when his successor took charge of the agency and receipted for the property belonging thereto.
He has been paid the salary of the office up to the end of the session of the Senate, August 5, 1886. He brings this suit to recover the salary of the office from that date until his successor took possession.
In his petition he sets up no claim for compensation as mere custodian of public property in his possession, nor does he allege or prove any specific property intrusted to him. It may be presumed that he had some public property, but its quantity and character, and the extent of responsibility arising therefrom, do not appear. Nor does it appear what would be a reasonable compensation for anything done by him. The salary established by law for the performance of all the duties of the office would not be a measure of compensation for the performance of part only of such duties. Many of the services required of an agent are of a higher order than the mere custody of property and maintaining possession until a successor is appointed, and in some cases they are delicate and confidential. (Rev. Stat., §§ 2058, 2086, 2090; Act of March 3, 1875, Supp. to Rev. Stat., ch. 132, § 4, p. 168.) Such services were undoubtedly taken into consideration by Congress in establishing the salary of the office, and went far towards increasing the amount. They could no longer be performed lawfully by the claimant after his official term had expired. The claimant must recover the whole salary or nothing, for we have no data for an apportionment even if that were admissible.
The judicial decisions are uniform that one claiming a salary must prove his legal title to the office, and that an officer de facto and not de jure can not maintain an action for salary. The principle is well stated in the case of The People v. Weber (89 *336 Ill., 348): “ While tbe acts of an officer de facto are valid, in so far as tbe rights of the public are involved and in so far as tbe rights of third persons having an interest in such acts are concerned. still, where a party sues or defends in his own right as a public officer it is not sufficient that he be merely an officer de facto. To do this he must be an officer dejure. As an officer de facto he can claim nothing for himself.” See also Dorsey v. Smyth, 28 Cal., 25; Stratton v. Oulton, 28 Cal., 51; Morton v. Tiernan, 30 Barbour, 193; Bennett’s Case, 19 C. Cls. R., 388; Revised Statutes, section 1760.
Two questions arise: First, did the claimant have a title to the office after the adjournment of the Senate? Second, if not, then is there anything in this ease which takes it out of the general rule ?
The Constitution provides, in article 2, section 3, paragraph 3, that “ the President shall have power to fill up all vacancies that may happen during the recess of the Senate by granting commissions, which shall expire at the end of theirnext session.” The form of the commission which has been in use from an early day, probably from the beginning, emphasizes the idea of limitation by adding the words and no longer. As was said by Mr. Justice Story, in United States v. Kilpatrick (9 Wheaton, 734), “it follows, therefore, both by the enactment of law and the form of the grant, that the commission must have expired of itself at that period ; that is the utmost extent to which it could reach.” See also The State v. Brewster (44 Ohio, 589).
(Since the decision in Kilpatrick’s case Congress has en-' acted provisions now contained in the following section of the Revised Statutes, in force at the time covered . by the claimant’s case:
“ Sec. 1769. The President is authorized to fill all vacancies which may happen during the recess of the Senate, by reason of death or resignation or expiration of terra of office; by granting commissions which shall expire at the end of their next session thereafter. And if no appointment, by and with the advice and consent of the Senate, is made to an office so vacant or temporarily filled during such next session of the Senate, the office shall remain in abeyance, without any salary, fees, or emoluments attached thereto, until it is filled by appointment thereto by and with the advice and consent of the Senate, and during such time all the powers and duties belonging to such office shall be exercised by such other officer as may by law exercise such powers and duties in case of a vacancy in such office.”
*337 That section not oiily suspends the office itself after the end of the session of the Senate in such case until a new appointment is made, but also declares that all the powers and duties of the office shall be exercised by some other person than the one whose commission has expired. Sections 1771 and 1772, also in force in 1885 and 1886,. declare penalties for violation of the provisions of that section, as well as of others of a similar character.
On this claim of holding over after the expiration of the constitutional tenure much reliance is placed upon the decision of the Supreme Court of California in Stratton v. Oulton (28 Cal., 44). Stratton was State librarian, whose term of office, fixed by statute, was four years. The* court held that by common law officers appointed for a term of years held until their successors were appointed and qualified, and there was nothing in the constitution or statutes of California to change that rule of law held to be in force in that State.
In view of the Constitution and statutes of the United States, the opinions of Attorneys-General and of the Supreme Court, as well as the practice of the Government so far as we have been able to ascertain, we do not think that any such principle of the common law has been adopted as applicable to public officers of the United States. Attorney-General Williams, in opinion furnished to the Secretary of the Treasury, reviewed the case of Stratton v. Oulton, and came to a different conclusion from that reached by the California court (14 Op. Att. Gen., 262). Attorney-General Stanbery advised that the term of the Secretary of the Territory of New Mexico was limited to four years, and after its expiration the incumbent of the office had no right to exercise its functions (12 Op. Att. Gen., 130). In addition to what we have quoted from the opinion by Mr. Justice Stor^in United States v. Kilpatriclc, the Supreme Court, speaking by Mr. Justice McLean, said in United States v. Eclc-ford (1 How., 258): “ Under the act of 1820 collectors of customs can only be appointed for four years. At the end of this term the office became vacant, and must be filled by a new appointment.”
Congress also has proceeded upon the view of the law expressed in these opinions. Revised Statutes, section 2056, provides that: “ Each Indian agent shall hold his office for the term of four years.” This was amended by enacting a substi *338 tute May 27, 1882 (22 Stat. L., ch.. 163, § 1, p. 87), in the same words, with this addition, “ and until his successor is duly appointed and qualified.”
Before the passage of the latter act Indian agents appointed for the term of four years under the former law were never treated nor regarded by the Interior Department, to which they belong, as holding over after the expiration of the stated term. Hence the necessity of the Act of 1882, which would have been wholly unnecessary if the common-law rule of California were in force with reference to the pnblic officers of the United States.
Independently of the foregoing considerations, the claimant urges that he is entitled to recover under regulations made by the President by authority of the following sections of the Be-vised Statutes:
“ Sec. 465. The President may prescribe such regulations as he may think fit for carrying info effect the various provisions of any act regulating Indian affairs, and for the settlement of the accounts of Indian officers.”
Among the regulations prescribed by the President are the following, which took effect January 1, 1885:
“ Sec. 189. The pay of a newly appointed Indian agent will commence on and include the day upon which he shall receipt to his predecessor for the public property, when he will be considered to be in actual possession of the agency; which date must be immediately reported to the Indian Office.”
“ Sec. 193. The salary of a retiring agent will cease with the day preceding that upon which his successor assumes charge; and the successor should not receipt until after assuming charge.”
The authority of the President to make regulations is subject to the condition, necessarily implied, that they must be consistent with the statutes which have been enacted by Congress, and must be in execution of, and supplementary to, but not in conflict with, the statutes. (United States v. Symonds, 120 U. S. R., 49.)
We can not give a construction to those regulations which would lengthen the term of office limited by the Constitution, by section 1769 of the Be vised Statutes, and by the commission; nor a construction which would give to one whose commission had expired by such limitation the salary or emoluments of an office declared to be in abeyance, without any salary, fees, or *339 emoluments attached thereto, and the duties of which are to oo performed by some other person, as provided in said section 1769.
Further, it is not to be assumed that the President by these regulations intended to direct the payment of money from the Treasury in clear violation of the following provisions of the Revised Statutes:
“ Sec. 1762. No money shall be paid or received from the Treasury, or paid or received from or retained out of any public moneys or funds of the United States, whether in the Treasury or not, to or by or for the benefit of any person appointed to or authorized to act in or holding or exercising the duties or functions of any office contrary to sections seventeen hundred and sixty-seven to seventeen hundred and seventy, inclusive; nor shall any claim, account, voucher, order, certificate, warrant, or other instrument providing for or relating to such payment, receipt, or retention, be presented, passed, allowed, approved, certified, or paid by any officer, or by any person exercising the functions or performing the duties of any office or place of trust under the United States, for or in respect to such office, or the exercising or performing the functions or duties thereof. Every person who violates any of the provisions of this section shall be deemed guilty of a high misdemeanor, and shall be imprisoned not more than ten years, or fined not more than ten thousand dollars, or both.”
A more sensible construction may be given those regulations, bringing them within the undoubted power of the President to make. It is that they apply only to those Indian agents whose term of office does not expire by statute until the qualification of their successors. Practically they fix the date of qualification as the day on which the new appointee takes the last step necessary to put himself in possession of the means to perform the duties of the office. That done, the statute, not the regulation determines to whom the salary belongs. Thus construed the regulations are reasonable and valid.
The claimant’s counsel cites Umbryv. United States (100 U. S. R., 680), affirming the judgment of this court (12 C. Cls. R., 455), as sustaining his position. That casearose upon those provisions of the tenure of office act which are embraced in section 1768 of the Revised Statutes, and which are in no way involved in this case.
Embry was a postmaster appointed for four years. During his term he was suspended, not removed, from office, and another person was appointed in his place and nominated to the Senate under the provisions of said section. The latter appointment *340 not having the end of the session of the Senate. He then became entitled to the office, but did not assume the duties until ten days later. In the mean time thead interim officer performed the duties. As the statute expressly provides that the latter “ shall, during the time he performs the duties of such officer, be entitled to the salary and emoluments of the office, no part of which shall belong to the officer suspended,” this court held that the salary ■during that period belonged to the one who performed the duties without reference to who had the legal title to the office, and gave judgment accordingly. The Supreme Court adopted that view and affirmed the judgment.
No such language as that which we have quoted is found in .any of the statutes involved in the present case, but all the ■statutes applicable to the claimant’s position make directly the opposite provisions.
It may be a hardship to the claimant to deny him pay for the time he performed duties after the expiration of his term of •office, and, if so, his remedy is in Congress, as suggested by the Commissioner of Indian Affairs to the Secretary of the Interior, .set out in finding yi.
The petition must be dismissed.