Peelle, J.,
delivered the opinion of the court:
A recovery is sought in this case for the difference between $600 per annum paid the claimant as clerk in the post-office at Washington, Ind., an office of the second class, and the *46 minimum salary of $700 per annum as chief clerk, which he claims from July 1, 1894, to April 25, 1897, as provided by the act of March 2, 1889. (1 Supp. Rev. Stats., 679, 682.)
The facts in the case, about which there is no controvers3r, are that the claimant was appointed a clerk in said post-office, and from July 1, 1894, to April 25, 1897, he served in said office under designations stated on the roster approved by the Postmaster-General for the periods and salaiy stated, respectively, as follows:

While thus serving' the claimant was recognized by the postmaster as chief clerk, and he performed the usual duties of a chief clerk at a second-class office. There were but two clerks in the office, the claimant being the highest paid, while the other was designated a stamper, and paid the salary fixed therefor by the Postmaster-General.
The post-office aforesaid was an office of the second class during the period for which the difference in salary is claimed herein — that is to saj^, the salary of the postmaster during the said period, as defined by section 5 of the act of July 12,1896 (19 Stat. L., 78), was less than $3,000, but not less than $2,000 per annum.
By the act of March 2,1889 (supra), in respect to the classification of the salaries attached to a second-class office, it is provided:
• “ That the Postmaster-General be, and he is hereby, authorized to classify and fix the salaries of the clerks attached to the second-class post-office's from and after July first, eighteen hundred and eighty-nine, as hereinafter provided:
‘ ‘ Provided, however, That the aggregate salaries as fixed by such classification as shall be made under this act shall not exceed the several sums appropriated by this act for the service authorized to be classified, namely:
“Chief clerk, nine classes, salary, graded in even hundreds of dollars, from seven hundred dollars to not exceeding one thousand five hundred dollars per annum.
“Mailing clerks, letter distributors, dispatchers, registry *47 clerks, stamp clerks, and money-order clerks, five classes, salary, graded in even hundreds of dollars, fi’om six hundred dollars to not exceeding one thousand dollars per annum. X- it- X-
“ Stampers, messengers, porters, janitors, and watchmen, four classes, salary, graded in even hundreds of dollars, from three hundred dollars to not exceeding six hundred dollars:
“Provided, That when the salaries'hereinbefore stated are adjusted and fixed, no clerk or employee shall be promoted or advanced in grade or salary without the approval of the Postmaster-General, in accordance with the requirement of section four hundred and sixty-four, Postal Laws and Regulations, edition-of eighteen hundred and eighty-seven; and hereafter postmasters at offices of the first and second classes shall submit rosters of the clerks attached to their respective, offices to the Postmaster-General, to take effect from the first day of the fiscal year, July first, instead of January first, as heretofore; and no roster shall be considered in effect until approved by the Postmaster-General.”
Section 464, Postal Laws and Regulations, therein referred to, provides in substance that the number, grade, and compensation of clerks for post-offices shall be fixed by the Postmaster-General, and that as the basis for his action the postmaster at each office of the first and second classes is required to sübmit annually to the First Assistant Postmaster-General for his approval a plan of the organization of his office, “with a roster or list of all clerks and other persons employed therein, stating the duties and compensation of each,” and that when approved by him no change can be made “until ordered by the Department.”
The act cited, as well as the regulation which it incorporates, prohibits the promotion or advancement in grade or salary of clerks and employees “without the approval of the Postmaster-General.”
The recognition by the postmaster of the claimant as chief clerk, and of his performing the duties usually pertaining thereto, can not be held to have changed his grade or compensation fixed by the Postmaster-General.
On the rosters approved by the Postmaster-General the claimant was designated: First, as money-order and stamp clerk; second, as mailing and money-order clerk, and third, as money-order and registry clerk; and opposite each desig *48 nation thereon bis salary was fixed at $600 per annum, which was paid to him.
When the Postmaster-General gave his approval to the rosters so submitted, the grade and compensation of the claimant thereby became fixed, and it was not thereafter within the power of the postmaster to promote or advance him either in grade or salary “without the approval of the Postmaster-General,” though he may in fact have assigned the claimant to other duties than those specified in the designation and have recognized him as chief clerk.
As was held in the case of Blecher (34 C. Cls. R., 400, 422), “ the record of the Department — that is to say, the record of his appointment — must govern both for the claimant and against the claimant.”
The question is not which one of the clerks was recognized by the postmaster as chief clerk or which one performed the highest grade of service in the post-office, but the question here is what was his status as shown by the record in the Post-Office Department. Hence the cases of Moore v. The United States (4 C. Cls. R., 139) and United States v. Mullan (123 U. S. R., 186), cited by the claimant, are not in point.
In the first of the cases cited, an officer in the navy of the Republic of Texas at the time of the annexation of that Republic was allowed to recover under a statute providing that the officers of the Republic of Texas who had been legislated out of office by its annexation “ shall be entitled to pay of officers of the like grade when waiting orders in the Navy of the United States for five jmai’s from the time of said annexation.”
There was but one captain at the time in the Texas navy, and the question was as to his right to pay as “senior captain,” and the court held that he was, he being at the time of annexation the highest officer in that arm of the service.
The other case cited need not be reviewed further than to say that the principle of construction adopted in that case can not be held to apply in this case, for the reason that the act under which the claimant seeks to recover provides in express terms “that when the salaries hereinbefore stated are adjusted and fixed, no clerk or employee shall be promoted or advanced in grade or salary without the approval of the Postmaster-General,” etc.
*49 That requirement not having been complied with, the claimant is not entitled to recover, and his petition is therefore dismissed.